UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A&W X-PRESS, INC.,

    Plaintiff,

v.

FCA US, LLC,

    Defendant.
_____/

Case No. 2:21-cv-12209
District Judge George Caram Steeh
Magistrate Judge Kimberly G. Altman

<u>**ORDER**</u>
<u>**GRANTING DEFENDANT'S MOTION TO COMPEL (ECF No. 49)**</u>
<u>**AND**</u>
<u>**DENYING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND/OR TO QUASH SUBPOENA DIRECTED TO CHASE BANK (ECF No. 50)**</u>

I.     Introduction

This is a commercial dispute. Plaintiff A&W X-Press, Inc. (A&W) is suing Defendant FCA US, LLC (FCA) seeking specific performance and declaratory relief relating to the renewal of a lease on commercial property owned by FCA and leased to A&W. *See* ECF No. 1. FCA says that A&W failed to comply with the "Option to Renew" provision in the lease and is seeking to evict A&W in a parallel state court proceeding. According to the complaint, "[t]he central issues in this case are: (a) whether the parties' Lease Agreement has been extended for another 5-year term (i.e., through 9/30/26); and (b) what the 'fair market [rental] rate' for

1

the Subject Property is." (*Id.*, PageID.5).[1]

Before the Court are two discovery motions—one filed by FCA, (ECF No. 49), and another filed by A&W, (ECF No. 50). The district court has referred all pretrial matters excluding dispositive motions to the undersigned. (ECF No. 32).

In its motion to compel, FCA seeks an order requiring A&W to produce "discoverable documents, electronically stored information, and tangible things responsive [to] FCA's First Set of Discovery Requests." (ECF No. 49, PageID.1271). The motion is fully briefed. (ECF Nos. 52, 54). Additionally, A&W has moved for a protective order and/or to quash the subpoena directed to Chase Bank. (ECF No. 50). FCA responded to this motion, (ECF No. 53), and A&W did not file a reply.

A telephonic status conference addressing outstanding discovery matters in this case was held on September 28, 2022, (ECF No. 56), and an in-person hearing on the two pending motions was held on October 5, 2022, (ECF No. 55). Additionally, the parties filed a joint statement of resolved/unresolved issues on September 28, 2022. (ECF No. 57).

For the reasons set forth below, FCA's motion to compel will be

---

[1] A&W moved for injunctive relief soon after filing suit. (ECF No. 5). The district court denied the motion, primarily because it found that A&W had failed to demonstrate a strong likelihood of success on the merits. (ECF No. 13). A&W appealed the district court's decision, (ECF No. 17), and the Sixth Circuit affirmed, (ECF No. 46).

2

GRANTED, (ECF No. 49), and A&W's motion for a protective order and/or to quash the subpoena directed to Chase Bank, (ECF No. 50), will be DENIED.

## II. Background

### A. The Complaint

A&W is a trucking/transportation company that leases a commercial property located in Warren, Michigan from FCA. (ECF No. 1, PageID.3, 5). The principal of A&W is Ray Mosawi (Mosawi).[2] (*Id.*, PageID.6). A&W employs approximately 85 employees/contractors and typically has between 100 and 125 trucks and more than 135 trailers at the property.[3] (*Id.*). "A&W uses its large fleet of vehicles to deliver supplies including fresh produce, auto parts and medical supplies to 700+ customers throughout the United States and Canada." (*Id.*). If FCA succeeds in evicting A&W, then A&W will be put out of business due to its inability to find another suitable commercial property to lease. (*Id.*, PageID.4-5).

The lease between A&W and FCA "provides A&W with a contractual right to renew its tenancy for two additional 5-year terms" with the monthly rent for the first renewal period set at $9,750 and the monthly rent for the second renewal

---

[2] Mosawi is also referred to in the parties' papers as Ray Almoosawi.

[3] Notably, however, in a June 21, 2022 affidavit submitted in the parallel state court proceedings, Mosawi said that he "exclusively owned and operated" several companies in addition to A&W. (ECF No. 49-5, PageID.1353). One of those companies, Ray's Transport, Inc. (Ray's Transport), "own[ed] the majority of the trucks/trailers that A&W dispatches to various jobs/locations." (*Id.*).

3

period to be determined by ascertaining " 'a fair market rate.' " (*Id.*, PageID.5). A&W exercised its contractual right to renew its tenancy for the first 5-year term, meaning that its lease was extended until September 30, 2021. (*Id.*).

On or about January 1, 2021, A&W and FCA began to discuss the possibility of A&W extending its lease for the second 5-year term. (*Id.*, PageID.6). On April 21, 2021, FCA's Real Estate Director, Ed O'Neil (O'Neil), emailed Mosawi noting that the parties agreed on the lease extension and that the only outstanding issue was the determination of the monthly fair market rate. (*Id.*). Then, on May 21, 2021, A&W's corporate counsel, George Contis (Contis), emailed O'Neil reaffirming the parties' agreement on the extension and proposing a comprehensive appraisal process so the monthly fair market rate could be determined. (*Id.*, PageID.6-7). On May 27, 2021, FCA's Real Estate Counsel, Sara Von Bernthal (Von Bernthal), responded to Contis' email wherein she confirmed the lease extension and asked several questions about the suggested appraisal process. (*Id.*, PageID.7). From May 27, 2021 through June 21, 2021, Contis and Von Bernthal continued to exchange emails regarding the determination of the monthly fair market rate. (*Id.*, PageID.7-8).

Despite the ongoing discussions between Contis and Von Bernthal, on June 24, 2021, FCA's Treasury Director, Gretchen Sonego (Sonego), sent Mosawi a letter addressing issues previously raised by Contis and proposing an " 'Appraisal

4

Mechanism' " that could be used to determine the monthly fair market rate. (*Id*., PageID.8). The same day, Contis sent a response letter to Sonego wherein he provided redline-edits to the proposed " 'Appraisal Mechanism.' " (*Id*., PageID.8-9).

On July 20, 2021, FCA's outside counsel, Monica Labe (Labe), sent a letter to A&W stating that A&W had failed to properly extend the lease under its written terms and would need to vacate the commercial property by September 30, 2021. (*Id*., PageID.9). Contis responded to Labe's letter via both a July 20, 2021 email and a July 26, 2021 letter expressing confusion and raising the prospect of litigation if FCA refused to extend the lease. (*Id*., PageID.9-10). On August 3, 2021, Labe replied to Contis' letter, reiterating that A&W had failed to properly extend the lease. (*Id*., PageID.10).

### B. The Lease

Relevant portions of the lease include § 9 and § 39. Section 9 forbids assignment of the lease by the tenant without the landlord's written consent:

> The Tenant covenants not to assign or transfer this Lease or hypothecate or mortgage the same or sublet said premises or any part thereof without the written consent of the Landlord. Any assignment, transfer, hypothecation, mortgage or subletting without said written consent shall give the Landlord the right to terminate his Lease and to re-enter and repossess the leased premises. Notwithstanding the foregoing, Landlord acknowledges that Tenant may sublease certain areas of the vacant parcel to customers for the purpose of truck & trailer storage. In no event, shall Tenant sublease any part of the Premises to a Subtenant, or Subtenants, for an amount, whether it is individually or collectively,

> greater than what Tenant is paying under the terms and conditions of this Lease. In the event that this occurs, Tenant shall forward these additional funds to Landlord along with its monthly rental.

(*Id.*, PageID.21-22). Meanwhile, § 39 provides the tenant with two options to renew the lease:

> *Provided tenant has never been in default of the terms and conditions of the Lease*, Landlord shall grant Tenant two (2) Options to Renew the Lease Agreement for five (5) year Lease Terms. Should Tenant elect to exercise its Option, Tenant shall provide Landlord with ninety (90) days advance written notice, return receipt requested. The rent schedule for the first five (5) year Renewal Term shall be at a monthly rate of $9,750.00. The rent schedule for the second Renewal Term shall be at a fair market rate.

(*Id.*, PageID.25) (emphasis added).

### III.  Legal Standards

#### A.  Motion to Compel

The scope of discovery, which permits a party to obtain "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," is always subject to being "limited by court order[,]" and thus, within the sound discretion of the Court. Fed. R. Civ. P. 26(b)(1); *see also State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 704 (E.D.

6

Mich. 2017) ("Further, a court has broad discretion over discovery matters, *Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir. 1999), and in deciding discovery disputes, a magistrate judge is entitled to that same broad discretion, and an order of the same is overruled only if the district court finds an abuse of discretion."). Discovery is more liberal than even the trial setting, as Rule 26(b) allows discovery of information that "need not be admissible in evidence." Fed. R. Civ. P. 26(b)(1).

If a party believes that another party is not complying with discovery requests, then it may file a motion to compel. Motions to compel are governed by Fed. R. Civ. P. 37(a)(3)(B), which states, "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection."

### B. Motion for Protective Order and/or to Quash

"A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26." *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016). "Under Federal Rule of Civil Procedure 26(c)(1), a district court may grant a protective order preventing the production of discovery to protect a party or entity from 'annoyance, embarrassment, oppression, or undue burden or expense.' " *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 235 (6th Cir. 2016). "To sustain a protective order under Rule 26(c), the moving party must show good cause for protection from one (or more) harms identified in Rule 26(c)(1)(A) with a

particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id*. at 236 (internal quotation marks and citation omitted). "Good cause exists if specific prejudice or harm will result from the absence of a protective order." *Id*. (internal quotation marks and citation omitted). Additionally, a district court is tasked with balancing "the right to discovery with the need to prevent fishing expeditions." *Id*. at 236-237 (internal quotation marks and citation omitted).

### IV. Discussion

#### A. Parties' Arguments

FCA argues that the discovery it requested must be produced for three key reasons. First, the requested financial documents will show whether and to what extent the commercial property was impermissibly subleased. Evidence of subleasing would establish that A&W violated § 9 of the lease, which forbids subleasing without written notice from FCA. Second, the requested discovery could help establish that A&W has acted with unclean hands and is thus unable to obtain equitable relief from this Court.[4] Third, the requested discovery will assist

---

[4] "[T]he doctrine of unclean hands is not a claim; rather the 'clean-hands doctrine closes the doors of equity to one tainted with inequitableness or bad faith to the matter in which he or she seeks relief, regardless of the improper behavior of the defendant.' " *McCann v. U.S. Bank, N.A.*, 873 F. Supp. 2d 823, 848 (E.D. Mich. 2012) (quoting *Richards v. Tibaldi*, 272 Mich. App. 522, 726 N.W.2d 770, 779 (2006)).

8

with the assessment of Mosawi's credibility given his prior conflicting statements.

Conversely, A&W points to five reasons why FCA's discovery requests fall outside the scope of the Federal Rules. First, the requested financial documents are irrelevant because A&W is seeking declaratory relief not money damages. Second, Fed. R. Civ. P. 26(b)(1)'s proportionality factors weigh in A&W's favor. Third, the judge in the parallel state court proceedings already rejected FCA's request to compel similar documents in that case. Fourth, federal courts forbid a party from using discovery to conduct a fishing expedition. Fifth, a magistrate judge in the Western District of Michigan denied a motion to compel financial documents in a similar case where a party wanted the documents to assess the plaintiff's credibility.

## B. Motion to Compel

### 1. Specific Requests

The discovery requests at issue in FCA's motion to compel are set forth below:

- <u>Request No. 4</u>: All Documents and Communications regarding any transactions, loans, payables, or receivables between A&W and Ray's Transport, Inc. for the calendar years 2018 through present.

- <u>Request No. 5</u>: All general ledger reports, balance sheets, and P/L statements and Communications regarding ledger details for A&W for the calendar years 2018 through present.

- <u>Request No. 6</u>: Financial statements (including but not limited to internally prepared, audited, reviewed, and / or compiled statements) for A&W for the calendar years 2018 through present.

9

- <u>Request No. 7</u>: Financial statements (including but not limited to internally prepared, audited, reviewed, and / or compiled statements) for Ray's Transport for the calendar years 2018 through present.

- <u>Request No. 8</u>: All disbursement details for A&W for the years 2018 through present, including but not limited to cash journals, check registers, and general ledger details.

- <u>Request No. 9</u>: All material disbursement details for Ray's Transport for the years 2018 through present, including but not limited to cash journals, check registers, and general ledger details.

- <u>Request No. 10</u>: All Documents and Communications concerning material ledger details for Ray's Transport for the years 2018 through present.

- <u>Request No. 11</u>: All chart of accounts for A&W for the years 2018 through present.

- <u>Request No. 12</u>: All chart of accounts for Ray's Transport for the years 2018 through present.

- <u>Request No. 13</u>: A&W's state of Michigan and federal income tax returns filed since 2018 through present, including all schedules, forms, and attachments.

- <u>Request No. 14</u>: Ray's Transport's state of Michigan and federal income tax returns filed since 2018 through present, including all schedules, forms, and attachments.

- <u>Request No. 15</u>: Ray Almoosawi, a/k/a Ray Mosawi's state of Michigan and federal income tax returns filed since 2018 through present, including all schedules, forms, and attachments.

(ECF No. 49-2).

2. Application of the Proportionality Factors

A proportionality analysis under Fed. R. Civ. P. 26(b)(1) requires consideration of the following factors: (a) the importance of the issues at stake in

10

the action, (b) the amount in controversy, (c) the parties' relative access to relevant information, (d) the parties' resources, (e) the importance of the discovery in resolving the issues, and (f) whether the burden or expense of the proposed discovery outweighs its likely benefit. Each factor will be considered below. As will be explained, this action involves a commercial property that FCA describes as a "multimillion dollar property." (ECF No. 49, PageID.1294). Even though A&W is seeking declaratory relief rather than money damages, the fact of the matter is that this lawsuit's purpose is to maintain control over a commercial property that its owner wants to use for a different purpose. In order to maintain this control, A&W asks this Court to use its equitable powers to order FCA to continue to lease the commercial property to it.

For A&W to be entitled to equitable relief, however, A&W must have clean hands irrespective of FCA's own conduct. FCA says it has uncovered evidence suggesting that A&W actually has unclean hands. FCA points to discrepancies between the complaint, an affidavit from Mosawi, and plaintiff counsel's representations at a hearing before the district court. For example, A&W asserts in its complaint that A&W employs approximately 85 employees/contractors and owns between 100 and 125 trucks and more than 135 trailers. (ECF No. 1, PageID.6). However, in a June 21, 2022 affidavit submitted in the parallel state court proceedings, Mosawi said that another company of his—Ray's Transport—

11

was the company that actually "own[ed] the majority of the trucks/trailers that A&W dispatches to various jobs/locations." (No. 49-5, PageID.1353).

Under § 9, unauthorized subleasing is prohibited. Moreover, § 39 of the lease provides that the lease cannot be extended if A&W was ever in default of the lease. FCA's discovery requests go to the heart of determining whether A&W complied with these provisions. Thus, the documents are relevant.

The requested documents, as FCA states, are primarily "routine financial documents prepared in the ordinary course of business[,]" (ECF No. 49, PageID.1294-1295), meaning that A&W's burden to produce them is low. The only potential issue is the fact that some of the requests are for financial documents concerning Mosawi and Ray's Transport rather than A&W. However, "[t]he Court 'cannot compel a party to provide information that he or she does not possess any more than it can compel that party to produce documents that do not exist or are *not in his possession, custody or control.*' " *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 569 F. Supp. 3d 626, 639 (E.D. Mich. 2021) (quoting *Roden v. Floyd*, No. 2:16-cv-11208, 2019 WL 1098918, at *3 (E.D. Mich. Mar. 8, 2019)) (emphasis added). Thus, if A&W truly does not have certain requested documents in its possession, custody, or control then counsel "must say so in a signed response[,]" and if the certification is found to be improper then counsel "may face sanctions." *Waskul*, 569 F. Supp. 3d at 638 (citing Fed. R. Civ. P. 26(g)).

In sum, the proportionality factors set forth by Rule 26(b)(1) weigh strongly in FCA's favor. Accordingly, the discovery sought by FCA falls within the scope of permissible discovery under the Federal Rules.

### 3. A&W's Additional Arguments

Although the Court has already determined that the requested discovery is permissible under Rule 26, two of A&W's arguments warrant discussion. First: the argument that a state court order precludes this Court from compelling the requested discovery. Second: the argument that a case from the Western District of Michigan suggests that financial documents cannot be obtained through discovery for the purpose of discovering conflicting information.

In its objections to FCA's discovery requests, A&W cites the doctrines of res judicata and collateral estoppel.[5] On June 7, 2022, in parallel state court proceedings, Macomb County Circuit Court Judge Caretti entered an order compelling the production of various financial documents by A&W and declining to compel the production of certain other documents. Judge Caretti's order, however, has no preclusive effect on this Court.

Res judicata is also called claim preclusion while collateral estoppel is also called issue preclusion. *Barnaby v. Witkowski*, 758 F. App'x 431, 436 (6th Cir.

---

[5] Plaintiff counsel appeared to concede that these doctrines were inapplicable at the motion hearing. Nonetheless, because A&W raised these objections in its response to FCA's discovery requests, they will be addressed.

2018). A&W is not seeking to end this lawsuit (after all, A&W is the plaintiff). Instead, it is seeking a determination by this Court that the *issues* underlying FCA's motion to compel have already been decided by Judge Caretti and that this Court is thus precluded from compelling A&W to produce the requested documents. *See Hamilton's Bogarts, Inc. v. Mich.*, 501 F.3d 644, 650-651 (6th Cir. 2007) ("Because collateral estoppel precludes future litigation of one specific issue, and because that is what the state effectively asks us to find, we construe their argument as one for collateral estoppel rather than res judicata, despite the substitution of one term for the other in the state's brief."). Accordingly, A&W's argument will be construed as one for collateral estoppel.[6]

"Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily

---

[6] The applicability of res judicata versus collateral estoppel was discussed in *Bowens v. Aftermath Entm't*, 364 F. Supp. 2d 641, 645 (E.D. Mich. 2005). *Bowens*—like this case—involved the applicability of the preclusion doctrines when "the federal and state claims proceeded simultaneously in the federal and state systems." *Id*. The *Bowens* court explained:

> There is no claim that the claims "should have been advanced in an earlier suit." Rather, the question is whether the parties should be precluded from "relitigating" certain issues that were decided first in the state court. Consequently, the doctrine of issue preclusion, not claim preclusion, applies to this case.

*Id*. (internal citations omitted).

14

determined in that prior proceeding." *Leahy v. Orion Twp.*, 269 Mich. App. 527, 530, 711 N.W.2d 438 (2006). Importantly, "[a] question has not been actually litigated until put into issue by the pleadings, submitted to the trier of fact for a determination, and thereafter determined." *VanDeventer v. Mich. Nat'l Bank*, 172 Mich. App. 456, 463, 432 N.W.2d 338 (1988); *see also Brown v. Snyder*, No. 19-11325, 2022 WL 2442168, at *7 (E.D. Mich. May 16, 2022), *report and recommendation adopted*, 2022 WL 2440343 (E.D. Mich. July 5, 2022).

Under Mich. Ct. R. 2.110(A), a pleading includes only: (1) a complaint, (2) a cross-claim, (3) a counterclaim, (4) a third-party complaint, (5) an answer to a complaint, cross-claim, counterclaim, or third-party complaint, and (6) a reply to an answer. "Though the court rules occasionally treat motions in the same manner as pleadings, technically, there is no question that a motion falls outside the definition of a pleading." *Keywell & Rosenfeld v. Bithell*, 254 Mich. App. 300, 343, 657 N.W.2d 759 (2002) (internal footnotes omitted).

Here, the questions at issue in this motion do not appear to have been actually litigated in state court. A&W has not, for example, provided a copy of the state court pleadings showing that the questions were put into issue. Without such a showing, this Court cannot apply the doctrine of collateral estoppel to preclude it from deciding FCA's motion to compel on the merits.

Moreover, "[c]ollateral estoppel applies only when the basis of the prior

judgment can be clearly, definitely, and unequivocally ascertained." *Ditmore v. Michalik*, 244 Mich. App. 569, 578, 625 N.W.2d 462 (2001). While Judge Caretti's order lists the discovery to be compelled from each party, it provides no explanation whatsoever as to the basis of the order. In other words, Judge Caretti's order does not explain *why* he decided to compel the production of certain discovery, nor does it explain *why* he decided not to compel the production of other discovery. Because this Court is unable to "clearly, definitely, and unequivocally," *see id.*, determine why Judge Caretti ruled as he did, the doctrine of collateral estoppel does not apply.

As to A&W's second argument, it cites *Pepin v. Wis. Cent. Ltd*, No. 2:19-cv-00042, 2020 WL 12432395 (W.D. Mich. Dec. 22, 2020) to support its argument that FCA cannot obtain financial documents merely because they might "reveal 'contradicting statements' " made by Mosawi, (ECF No. 49, PageID.1635). A&W's reliance is misplaced. In *Pepin*, the court denied a motion to compel discovery of an injured plaintiff's financial records. *Id*. at *3. But the court also stated, that "if [the] [d]efendant learns that [the plaintiff] was earning income or engaging in activities that were inconsistent with his claims, then the [c]ourt would re-evaluate its ruling." *Id*.

This case is distinguishable from *Pepin*. First, FCA wants financial documents concerning Mosawi for several reasons, only one of which is that they

may contain information to further prove Mosawi has made inconsistent statements in this case. Another reason FCA wants the documents is because they may show that A&W subleased the commercial property to other companies owned by Mosawi and/or that A&W earned income from subleasing the property in excess to the amount of rent that it paid to FCA under the lease. Second, unlike the defendant in *Pepin*, FCA has already shown that Mosawi has made contradictory statements thereby putting his credibility in doubt. Thus, the undersigned is not persuaded by *Pepin*.

### C. Motion for Protective Order and/or to Quash

#### 1. Subpoena to Chase Bank

In addition to the discovery requested from A&W, FCA also served a subpoena on Chase Bank, requesting:

> Please produce on or before September 12, 2022, the following records and documents:
>
> 1. All documents, communications and all electronically stored information, emails, texts, or other electronic communications sent or received regarding any Paycheck Protection Program loan, including the loan(s) referenced above, Ray's Transport, Inc. applied for, including any documents, communications and all electronically stored information, emails, texts, or other electronic communications sent to or received from the Small Business Administration in connection with any such loan application(s).
>
> 2. Copies of any and all documents—including bank statements, signature cards and beneficiary designations, check images, withdrawal/deposit slips, account agreements, safe deposit box access tickets, etc.—associated with any checking account, savings account,

17

>Certificate of Deposit, safe deposit box account or otherwise, whether active or closed, in the name of Ray's Transport Inc., individually or as a joint tenant, from January 1, 2018 to present.

(ECF No. 50-2, PageID.1401).

### 2. Protective Order Under Rule 26(c)(1)

As stated above, under Fed. R. Civ. P. 26(c)(1), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" In its motion, A&W does not identify which of the Rule 26(c)(1) harms it is relying on. However, when asked at the motion hearing, counsel for A&W said that the subpoena constituted an undue burden and was also overly broad and was "purely intended to harass." Counsel also asserted that FCA was improperly using its size and power against a smaller entity.

Counsel for FCA argued that the subpoena was not intended to harass. Counsel also emphasized the fact that A&W still had the benefit and use of FCA's property. Additionally, counsel explained that the subpoenaed information, particularly the information concerning the Paycheck Protection Program (PPP), was highly relevant because the PPP application would indicate the number of individuals employed by Ray's Transport and also show if the applicant had any other businesses.

Overall, A&W's arguments do not carry the day. The only Rule 26(c)(1)

18

harm identified by A&W was undue burden. However, there is no burden on A&W whatsoever because the subpoena at issue is a third-party subpoena. *See, e.g.*, *McNaughton-McKay, Elec. Co. v. Linamar Corp.*, No. 09–CV–11165, 2010 WL 2560047, at *3 (E.D. Mich. June 15, 2010) ("Defendant does not have standing to argue that Chrysler's compliance with the subpoena will cause undue burden where Chrysler has not objected to the subpoena on this ground."). Additionally, FCA's argument regarding the particular relevance of any PPP information demonstrates that the subpoena is for a legitimate purpose and is not being used as a tool to harass A&W. Accordingly, A&W's motion for a protective order and/or to quash the subpoena directed to Chase Bank will be denied.

## V. Conclusion

For the reasons stated above, the Court GRANTS FCA's motion to compel, (ECF No. 49), and DENIES A&W's motion for a protective order and/or to quash the subpoena directed to Chase Bank, (ECF No. 50).

1) A&W is ORDERED to produce all responsive documents requested in FCA's First Set of Discovery Requests within 21 days of the entry of this order; and

2) A&W's motion for a protective order and/or to quash the subpoena directed to Chase Bank is DENIED.

   SO ORDERED.

Dated: October 20, 2022  
Detroit, Michigan

s/Kimberly G. Altman  
KIMBERLY G. ALTMAN  
United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 20, 2022.

s/Julie Owens  
Case Manager