UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A & W X-PRESS, INC.,
a Michigan corporation,

      Plaintiff,

                                   Honorable George Caram Steeh

v.

                                   Magistrate Judge Kimberly Altman

FCA US LLC,
a Delaware limited liability company,      Case 2:21-cv-12209

      Defendant.

---

LAW OFFICES OF MICHAEL J. HAMBLIN
Michael J. Hamblin (P61834)
Attorney for Plaintiff A & W
  X-Press, Inc.
40900 Woodward Avenue, Suite 111
Bloomfield Hills, Michigan 48304
(248) 763-6195
mhamblin@hamblinlaw.com

DICKINSON WRIGHT PLLC
Peter H. Webster (P48783)
Patrick J. Masterson (P85457)
Attorneys for Defendant FCA US LLC
2600 West Big Beaver Road, Suite 300
Troy, MI 48084
(248) 433-7200
pwebster@dickinsonwright.com
pmasterson@dickinsonwright.com

---

**DEFENDANT FCA US LLC'S MOTION FOR ATTORNEYS
FEES PURSUANT TO FED. R. CIV. P. 54(d)(2) AND
<u>THIS COURT'S INHERENT AUTHORITY</u>**

      Defendant FCA US LLC ("FCA") moves for attorney's fees against Plaintiff

A & W X-Press, Inc. ("A & W") and its principal, Ray Almoosawi, pursuant to FED.

R. CIV. P. 54(d)(2) and this Court's inherent authority.

In support of this Motion, FCA relies on the facts, argument, and authority in its accompanying Brief in Support.

WHEREFORE, FCA respectfully requests that this Court (1) grant its motion for sanctions pursuant to Rule 54(d)(2) and this Court's inherent authority; and (2) enter an order requiring A & W and Almoosawi to pay, jointly and severally, FCA the reasonable expenses, amounts to $738,987.25.

DICKINSON WRIGHT PLLC

/s/Patrick J. Masterson
Peter H. Webster (P48783)
Patrick J. Masterson (P85457)
Attorneys for Defendant FCA US LLC
2600 West Big Beaver Road, Suite 300
Troy, MI 48084
(248) 433-7200
pwebster@dickinsonwright.com
pmasterson@dickinsonwright.com

Dated:  October 3, 2023

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A & W X-PRESS, INC.,
a Michigan corporation,

       Plaintiff,

                             Honorable George Caram Steeh

v.

                             Magistrate Judge Kimberly Altman

FCA US LLC,
a Delaware limited liability company,    Case 2:21-cv-12209

       Defendant.

---

| LAW OFFICES OF MICHAEL J. HAMBLIN | DICKINSON WRIGHT PLLC |
|---|---|
| Michael J. Hamblin (P61834) | Peter H. Webster (P48783) |
| Attorney for Plaintiff A & W | Patrick J. Masterson (P85457) |
|   X-Press, Inc. | Attorneys for Defendant FCA US LLC |
| 40900 Woodward Avenue, Suite 111 | 2600 West Big Beaver Road, Suite 300 |
| Bloomfield Hills, Michigan 48304 | Troy, MI 48084 |
| (248) 763-6195 | (248) 433-7200 |
| mhamblin@hamblinlaw.com | pwebster@dickinsonwright.com |
| | pmasterson@dickinsonwright.com |

---

**DEFENDANT FCA US LLC'S BRIEF IN SUPPORT OF ITS MOTION
FOR ATTORNEYS FEES PURSUANT TO FED. R. CIV. P. 54(d)(2)
<u>AND THIS COURT'S INHERENT AUTHORITY</u>**

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES.......................................................... iii

STATEMENT OF THE QUESTIONS PRESENTED................................................iv

CONTROLLING OR MOST APPROPRIATE AUTHORITIES............................v

I.     INTRODUCTION ............................................................1

II.    STATEMENT OF MATERIAL FACTS .......................................1

       A.    The Property & The Lease ...........................................1

       B.    Almoosawi Knew A & W's Operations and His Subleasing Activities
             Were At Issue Before the Commencement of Litigation......................2

       C.    Almoosawi Chose to Engage in Bad Faith Litigation to Prolong his
             Possession of the Property....................................................4

       D.    A & W and Almoosawi Continued Bad Faith Tactics During Discovery
             .....................................................................................6

       E.    FCA's Renewed Motion for Summary Judgment and Request for
             Sanctions Regarding Bad Faith Affidavits...........................10

       F.    This Court Enters Judgment in Favor of FCA and Sanctions A & W for
             Bad Faith Conduct...............................................................11

III.   ARGUMENT........................................................................12

       A.    Applicable Legal Standard ................................................12

       B.    The Full Range of A & W and Almoosawi's Bad Faith Conduct is Now
             Ripe for Sanctions ..............................................................14

       C.    A & W and Almoosawi Engaged in Bad Faith Conduct Throughout this
             Proceeding ......................................................................16

             1.    A & W and Almoosawi Misrepresented to the Court A & W's
                   Operational Status and the Activities Occurring on the
                   Property ..................................................................17

2.    A & W and Almoosawi Pursued Meritless Claims Through the Concealment of Material Evidence...........................................18

D.    A &W and Almoosawi's Bad Faith Conduct Caused FCA to Incur Substantial Fees and Costs ................................................18

IV.    CONCLUSION AND RELIEF REQUESTED...........................................23

# INDEX OF AUTHORITIES

**Cases**

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017) ...................... 19, 22

*BDT Prod., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742 (6th Cir. 2010) ....................14

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)................................................. 17, 21

*Farrar v. Lapan*, 2023 WL 3151093 (6th Cir. Apr. 28, 2023)................................17

*Farrar v. Lapan*, No. 20-CV-10554,
  2022 WL 4122043 (E.D. Mich. Sept. 9, 2022)....................................................21

*First Bank of Marietta v. Hartford Underwriters Ins. Co.*,
  307 F.3d 501 (6th Cir. 2002) ...............................................................................18

*Fox v. Vice*, 563 U.S. 826 (2011)...........................................................................19

*Griffin Indus., Inc. v. U.S. E.P.A.*, 640 F.3d 682 (6th Cir. 2011) ...........................14

*Helmac Prod. Corp. v. Roth (Plastics) Corp.*,
  150 F.R.D. 563 (E.D. Mich. 1993) ......................................................................14

*Shimman v. Int'l Union of Operating Engineers, Loc. 18*, 744 F.2d 1226
  (6th Cir. 1984)............................................................................................... 13, 19

## <u>STATEMENT OF THE QUESTIONS PRESENTED</u>

1. Should this Court sanction A & W and Almoosawi pursuant the Court's inherent authority where A & W and Almoosawi caused FCA to incur substantial fees and costs by:

   a. misrepresenting to the Court A & W's operational status and the activities occurring on the Property; and/or

   b. pursuing meritless claims through the concealment of material evidence?

**FCA Answers:**        **Yes**

**A & W Answers:**        **No**

**This Court Should Answer:**   **Yes**

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

FCA US LLC relies upon *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 523 (6th Cir. 2002); and *BDT Prod., Inc. v. Lexmark Int'l., Inc.*, 602 F.3d 742, 753 (6th Cir. 2010).

## I.    INTRODUCTION

A & W X-Press, Inc. ("A & W") started this proceeding over two years ago so it could continue its wrongful occupation of the commercial property (the "Property") that FCA US LLC ("FCA") owns, despite the parties' lease agreement (the "Lease") expiring on September 30, 2021. During that time period, A & W and Almoosawi were successful in leveraging their bad faith conduct to prolong this proceeding and their possession of the Property. Now that the Court has punctured A & W and Almoosawi's utilization of this forum, it should also issue sanctions pursuant to its inherent authority that sufficiently addresses the full range of Almoosawi's abuses of the judicial process.

This Court is familiar with the facts and issues in this proceeding. *See* Order, ECF No. 113, PageID.5794–5801.  The procedural posture, however, highlights the full breadth of A & W's and Almoosawi's bad faith conduct.

## II.    STATEMENT OF MATERIAL FACTS

### A.    The Property & The Lease

FCA purchased the Property on December 2, 2019. FCA's predecessor-in-interest previously leased the Property to A & W.  By virtue of its purchase, FCA holds fee title and assumed the Lease.  The Property is located directly across Mound Road from FCA's Truck Assembly Plant, Stamping Plant, and Truck-Paint Shop.

The Lease was signed in 2011 and had an initial term of five years, with the option to renew the Lease for two additional five-year terms (each a "Renewal

Option"). The first renewal term was subject to a rent rate of $9,750. The second renewal term, if exercised, would be at a fair market rate. Each Renewal Option was expressly conditioned on A & W never being in default of the Lease. Relevant here, as an exception to the blanket prohibition of subleasing, the Lease permitted the subleasing of certain portions of the Property for parking/storage to A & W's customers. However, if revenue from such subleasing exceeded A & W's rent, A & W was required to pay over such surplus revenues to FCA.

### B. Almoosawi Knew A & W's Operations and His Subleasing Activities Were At Issue Before the Commencement of Litigation

FCA opened the discussion regarding the fair market rate for A & W's possible renewal term in early 2021. ECF No. 89-19, PageID.3660. As discussions continued, FCA proposed a valuation method. ECF No. 1, PageID.63. Because information regarding subleasing revenues were highly relevant to the issue of the fair market rate, FCA requested A & W "provide to Landlord any and all documentation, information and/or data regarding any income that was generated from Tenant's lease, sublease, license or any other occupancy agreement with another party of all or a part of the Premises, including the truck, tractor and trailer parking." *Id.* A & W refused to provide the requested documents.

Given A & W's refusal to provide documents regarding the subleasing records, FCA became concerned that A & W wrongfully withheld subleasing revenues in breach of the Lease. Accordingly, in its July 20, 2021 letter, FCA

formally demanded A & W provide the requested documents regarding the parking operation conducted on the Property.  ECF No. 1, PageID.72.

Upon receipt of FCA's notice and demand to produce documents demonstrating compliance with Section 9 of the Lease, Almoosawi requested his broker, Paul Reschke, review and analyze the obligations under Section 9. **Exhibit 1**, Almoosawi Email to Reschke.  Despite his apparent awareness of Section 9's terms, Almoosawi refused to provide the requested documents.

Instead, A & W's then-attorney, George Contis, responded with dubious claims that A & W exercised the Renewal Option.  ECF No. 1, PageID.78.  Still, Contis stated A & W "stands ready to provide the requested information and will demonstrate that Tenant is in compliance with its obligations under the Lease."  *Id.* Notwithstanding that commitment, the requested records were not provided.

On August 3, 2021, FCA again renewed its demand for an "accounting to confirm Tenant's adherence to the Lease, in the form of documentation, information and/or data regarding any income that was generated from Tenant's lease, sublease, license or any other occupancy agreement with another party of all or a part of the Premises, including the truck, tractor and trailer parking."  ECF No. 9-2, PageID.206.  This time, A&W's attorney actually advised A&W to "provide the requested information." **Exhibit 2**, Contis Email to Almoosawi.  Still, no documents regarding the subleasing of the Property were provided.  Unbeknownst to FCA at

that time, the withheld records showed another entity—Quality Truck & Trailer—was impermissibly subleasing the Property in A & W's place in amounts exceeding the Lease's pay-over provision.

**C.     Almoosawi Chose to Engage in Bad Faith Litigation to Prolong his Possession of the Property**

Rather than provide the requested records regarding the operations on the Property, Almoosawi elected to engage in bad faith litigation to prolong his possession of the Property.  Notably, litigation started on September 20, 2021 with FCA's filing its complaint for declaratory relief in Macomb County Circuit Court.  Later that day—for no apparent reason other than to wrongfully remain on the Property—A & W commenced this proceeding.

A & W immediately misrepresented its operations at the Property to this Court.  Specifically, A & W represented it "has approx. 85 employees/contractors and, at any given time, has 100 to 120 trucks and over 135 trailers on site at the Subject Property."  ECF No. 1, PageID.3 at ¶ 12.  Further misrepresenting its operations, A & W claimed it "uses its large fleet of vehicles to deliver supplies including fresh produce, auto parts and medical supplies to 700+ customers throughout the United States and Canada."  *Id.* at ¶ 13.  Soon after filing its complaint, A & W moved for an *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction where A & W repeated its misstatements presented in its Complaint.  *See* ECF No. 5, at PageID.96.

4

In conjunction with its *Ex Parte* Motion for Temporary Restraining Order, Almoosawi submitted an affidavit to this Court again misrepresenting A & W's operations on the Property. *See* ECF No. 5-3, PageID.112 ("For the past ten (10) years, A&W has used the Subject Property to operate its business."). Almoosawi averred that if FCA regained possession of its Property, A & W "will be forced to go out of business" and "there would simply be no place to house: (a) A&W's 100 to 120 trucks; (b) A&W's 135+ trailers; and/or (c) A&W's 85 employees/contractors." *Id.* at PageID.114.

In supporting its request for extraordinary relief, A & W was unambiguous in its false assertion that A & W was the operating entity on the Property. *See* Reply in Support of Mot. for TRO, ECF No. 10, PageID.326 ("Ray's Transport, Inc. . . . is simply a sister company – i.e., which, like A&W, is owned exclusively by Ray Almoosawi – that assists A&W with its trucking operations. Finally, the overwhelming majority of the trucks/property/etc. located at the Subject Property are, in fact, owned and utilized by A&W."); Hearing on TRO Motion, ECF No. 12, PageID.367 ("A&W owns everything in . . . [the] 24,000-square-foot facility, all of the equipment, all of the machinery, and the majority of the trucks and trailers. So this argument that it's Ray's that will be harmed, which is simply a wholly owned subsidiary that contracts with A&W to also make deliveries is, frankly, nonsense.").

Following this Court's denial of A & W's TRO motion, FCA submitted its initial Motion for Summary Judgment on January 27, 2022. (ECF No. 19). FCA's initial motion argued discovery would not change the fact A & W's renewal theories failed as a matter of law. FCA further argued that A & W's claims failed because it lost its remaining Renewal Option due to subleasing activities in breach of the Lease. *See* ECF No. 19, PageID.506.

In response, A & W filed a Motion to Defer Adjudication, arguing it "cannot file a complete and/or comprehensive response to Defendant's Motion for Summary Judgment" without further opportunity for discovery. *See* ECF No. 20, PageID.793. Additionally, A & W and Almoosawi submitted two affidavits pursuant to Rule 56.[1] Relying on A & W's misstatements, this Court granted A & W's Motion to Defer Adjudication and allowed the parties to proceed to discovery. *See* Order, ECF No. 36.

**D.    A & W and Almoosawi Continued Bad Faith Tactics During Discovery**

Following substantial third-party discovery to uncover the truth and to overcome A & W and Almoosawi's bad faith litigation tactics, FCA discovered dispositive records and evidence Almoosawi actively concealed.

---

[1] The affidavits submitted in response to FCA's initial Motion for Summary Judgment were the subject of FCA's previous sanctions motion. *See* ECF No. 91.

First, FCA discovered that—contrary to Almoosawi's misstatements regarding A & W's expansive, decade-long operations at the Property—A & W operated as an insolvent shell corporation.  Specifically, sworn testimony of A & W's former President showed A & W was dissolved and declared insolvent in 2014.  *See* Wood Affidavit, ECF No. 89-9, PageID.3413.  Since its dissolution in 2014, A & W has not filed taxes, maintained financial records, nor employed or contracted a single person or entity.  *See* Wood Deposition, ECF No. 89-11, PageID.3473 at 107:25.

Second, notwithstanding Almoosawi's repeated representations that no subleasing occurred on the Property and that Quality Truck & Trailer was a defunct corporation, FCA discovered a concealed Quality Truck & Trailer bank account, evincing over ***$2.5 million*** in previously concealed parking and repair revenues derived from the Property.  ECF No. 99-6, PageID.4604.

The dispositive records laid bare Almoosawi's material misrepresentations and concealment.  As Almoosawi knew, A & W was not entitled to the sought after relief due to its violations of Sections 9 and 10 of the Lease.  Notwithstanding this knowledge, Almoosawi used the discovery period to continue his original misrepresentations regarding A & W's operations and the impermissible subleasing activities occurring on the Property and to wrongfully remain on the Property.  That continued bad faith conduct caused prolonged delay in this case.

On June 21, 2022, Almoosawi produced another affidavit where he again claimed "for more than 10 years, A&W has used the property and facilities located at 22077 Mound Road, Warren, Michigan ('Subject Property') to operate its business." ECF No. 89-14, PageID.3565, at ¶ 4.  As for Quality Truck & Trailer, Almoosawi testified that "Quality Truck & Trailer, Inc. (f/k/a Quality Trucking Repair, Inc.) was formed to be a trucking repair company.  It never generated any income or filed a tax return.  It does not have any relationship to A&W.  It is defunct." *Id.* at ¶ 5.d. On the issue of subleasing on the Property, Almoosawi stated "A&W has never subleased any portion of the Subject Property to another individual or entity." *Id.* at ¶ 8.  As for the unaffiliated trucks on the Property, Almoosawi claimed "[s]everal truckers who own and operate their own truck and trailer often park their trucks at the Subject Property so they are available when needed when #1 Solutions or A&W locate shipping opportunities." *Id.* at ¶ 8.d.  According to Almoosawi, "***None of them have ever entered into a sublease*** or paid A&W, Ray's or #1 Solutions any money for temporary parking their trucks or trailers at the Subject Property." *Id.* (emphasis added).

In discovery responses, A & W first stated on August 15, 2022 it did not possess any records regarding A & W's "sublease, granting of permission to use, and/or license of the Property to any other entity." *See* ECF No. 49-3, PageID.1329, A & W's Responses to First Set of Discovery Requests. Similarly, in responding to

8

the October 28, 2022 subpoena to Quality Truck & Trailer, Almoosawi stated no records regarding that entity's operations or subleasing activities exist.   *See* **Exhibit 3**, Almoosawi Response to Quality Truck & Trailer Subpoena; *see also*, **Exhibit 4**, Subpoena to Quality Truck & Trailer.   On November 23, 2022, Almoosawi again flouted detailed requests regarding A & W's activities on the Property and Quality Truck & Trailer's parking and repair operation.   **Exhibit 5**, A & W's Responses to FCA's Second Set of Discovery Requests.   When this Court ordered A & W to produce "documents and communications regarding the Lease from 2019 to the present," it refused to do so.   Order, ECF No. 73, PageID.2354, at ¶ 3.

Almoosawi's concealment and misrepresentations were not limited to written discovery.   At his deposition Almoosawi concealed the Quality Truck & Trailer records through perjury, expressly denying Quality Truck U& Trailer maintained a bank account.   *See* Almoosawi Dep. Transcript, ECF No. 99-5, PageID.4601, 151:5–7.   In perhaps his least dignified transgression, Almoosawi volunteered to provide material misrepresentations directly in open Court, stating "We are not a public shop so we don't do maintenance for outsiders . . . But FCA -- and they think they are park in there or paying parking fee or things like that, or we subleasing the property to them."   AHS Show Cause Hearing, ECF No. 94, PageID.4227.

The prejudice FCA incurred due to A & W and Almoosawi's misrepresentations and concealment is palpable.  In addition to the prolonged delay, FCA incurred substantial costs in discovery ferreting out the truth.  Additionally, the misrepresentations and concealment prejudiced FCA in presenting its case in a timely manner.  Although FCA was ultimately successful on its Renewed Motion for Summary Judgment, FCA did not obtain the critical Quality Truck & Trailer records until after the dispositive motion cut-off had passed.

**E.**    **FCA's Renewed Motion for Summary Judgment and Request for Sanctions Regarding Bad Faith Affidavits**

Upon the close of discovery, FCA filed its Renewed Motion for Summary Judgment.  *See* ECF No. 89.  On April 7, 2023, FCA filed its Motion for Sanctions Pursuant to Rule 56(h) and this Court's Inherent Authority.  *See* ECF No. 91.  The misconduct FCA's motion for sanctions targeted was expressly stated.  Specifically, FCA sought sanctions for the two affidavits submitted in response to FCA's initial Motion for Summary Judgment.  *See* ECF No. 91, PageID.4004, Statement of the Question Presented.   The first affidavit, submitted on behalf of Almoosawi, contained misstatements.  *See* ECF No. 21-3.  The second affidavit, submitted on behalf of the former landlord's principal, purposefully omitted material information. *See* ECF No. 33-1. FCA argued the two affidavits were submitted in bad faith in

violation of Rule 56(h).[2]   Additionally, to alleviate any doubt that the Court's authority reached Almoosawi's bad faith affidavit submitted in response to FCA's Motion for Summary Judgment, FCA sought sanctions pursuant to the Court's inherent authority.  Unaddressed by that motion, however, was the broader range of misstatements and misconduct that transcended the two affidavits submitted in response to FCA's initial Motion for Summary Disposition.

## F.     This Court Enters Judgment in Favor of FCA and Sanctions A & W for Bad Faith Conduct

In granting FCA's Renewed Motion for Summary Judgment in its entirety, this Court crystallized the materiality of A & W's and Almoosawi's misstatements and concerted concealments.  Regarding A & W's operations, notwithstanding Almoosawi's repeated misstatements—dating back to A & W's Complaint and his October 1, 2021 affidavit submitted in support of A & W's TRO Motion—this Court found there was no issue of fact that A & W was insolvent.  Order, ECF No. 113, PageID.5805.  Moreover, this Court found A & W was precluded from obtaining equitable relief due to Almoosawi's repeated misrepresentations regarding A & W's activates on the Property.  *Id.* at PageID.5813–5814.  This Court further found A & W lost its renewal option because of Lease breaches, including subleasing the

---

[2] Rule 56(h) states, in relevant part:  "If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result."

Property to Ray's Transport, Inc.  *Id.* at PageID.5806.  Relevant here, the Court further noted Quality Truck & Trailer operated on the Property in apparent violation of the Lease.  *Id.* at PageID.5805 n. 5.

Upon reviewing the record, the Court determined "A & W has not been forthright about its corporate existence and operations from the outset of this litigation."  *Id.* at PageID.5817 (*citing* ECF No. 1 at ¶¶ 12, 13; ECF No. 5-3).  Instead, "[b]y misrepresenting A & W as an operating business, A & W has prolonged this litigation and Almoosawi has benefited from the delay by remaining on the property to operate his other businesses, which are not parties to the lease."  *Id.*  Given that misconduct this Court found "that A & W and Almoosawi, as its sole representative, have acted in bad faith and that their conduct has adversely impacted the entire litigation.  The prejudice to FCA, which has incurred the expense of ferreting out the truth, is clear."  *Id.*

### III.  ARGUMENT

#### A.  Applicable Legal Standard

Rule 54(d)(2) permits a party to file a motion within 14 days after the entry of judgment  requesting attorney's fees and related nontaxable expenses.  The motion must specify the judgment, the grounds entitling the movant to the award, and state the amount sought or provide a fair estimate of it.  *Id.*  In reviewing a motion for attorney's fees pursuant to Rule 54(d)(2), the Court may decide issues of liability for

fees before receiving submissions on the value of services. *Id.* at (C). Additionally, the Court may refer the motion to a magistrate judge under Rule 72(b).

Here—following the entry of this Court's Judgment (ECF N0. 114)—FCA requests an award of its attorney's fees and related nontaxable expenses pursuant to this Court's inherent authority. "[I]t has long been held that a federal court may award counsel fees to a successful plaintiff where a defense has been maintained 'in bad faith, vexatiously, wantonly, or for oppressive reasons." *Shimman v. Int'l Union of Operating Engineers, Loc. 18*, 744 F.2d 1226, 1229 (6th Cir. 1984) (en banc). Where a party engages in bad faith litigation, the award of attorney's fees is appropriate because "the successful party has ordinarily suffered two wrongs: one in the events giving rise to the litigation, and another in the wrongful conduct or instigation of the litigation." *Id.* at 1231. While costs incurred addressing the original wrong are not compensable because they represent the cost of maintaining open access to an equitable system of justice," the interest of maintaining open access to courts "is not served [] by denying fee awards when the justice system has been wrongfully used." *Id.*

The Sixth Circuit uses a three prong test when assessing whether sanctions pursuant to the Court's inherent authority are appropriate. "In order to justify such a bad faith award of attorney fees, the district court must find (1) that the position advanced or maintained by a party was meritless, (2) that the meritlessness was

known to the party, and (3) that the position was advanced or maintained for an improper purpose, such as harassment." *Griffin Indus., Inc. v. U.S. E.P.A.*, 640 F.3d 682, 685–86 (6th Cir. 2011) (internal citations omitted). In satisfying this three pronged test, "the court must find something more than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *BDT Prod., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 753 (6th Cir. 2010) (emphasis omitted). "Harassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts are all examples of the sorts of conduct that will support a finding of bad faith or improper purpose." *Id.* at 754.

Finally—as this Court already found applicable in the present proceeding—a court may sanction non-parties pursuant to its inherent authority. "To be subject to the Court's inherent power to sanction, a non-party not subject to court order must (1) have a substantial interest in the outcome of the litigation and (2) substantially participate in the proceedings in which he interfered." *Helmac Prod. Corp. v. Roth (Plastics) Corp.*, 150 F.R.D. 563, 568 (E.D. Mich. 1993).

**B.    The Full Range of A & W and Almoosawi's Bad Faith Conduct is Now Ripe for Sanctions**

Upon entry of the Judgment, the full range of A & W's and Almoosawi's bad faith conduct is now ripe for a motion for sanctions pursuant to Rule 54(d)(2) and this Court's inherent authority. The post-judgment deadline for filing the instant

14

motion is necessary here because Almoosawi's bad faith conduct slowly unwound as a result of his deliberate concealment.

Indeed, up until this Court's Order and Judgment, evidence of additional bad faith conduct continued to emerge. Specifically, as a result of this Court's Order Regarding MGM's Appearance to Show Cause Why it Should Not Be Held in Contempt of Court (ECF No. 110), FCA obtained phone records showing Almoosawi placed a phone call to Dave Milenkovic of MGM Transportation LLC on September 23, 2022—one day after Almoosawi received notice of FCA's subpoena to MGM. *See* **Exhibit 6**, Phone Records. Shortly after Almoosawi's phone call, Dave Milenkovic perpetrated the same non-truth regarding the presence of unaffiliated trucks stored on the Property: according to both Milenkovic and Almoosawi, no rent was paid for such storage. *See* ECF NO. 103, PageID.5729. In actuality, MGM and dozens other unaffiliated truck companies subleased the Property from Quality Truck & Trailer. ECF No. 100-4, PageID.5030. But for this Court's Judgment, FCA would have sought leave to obtain additional discovery regarding Dave Milenkovic and Almoosawi's relationship and the content of their conversations.

By contrast, the issues raised in FCA's previous motion were ripe upon A & W's and Almoosawi's submission of the bad faith affidavits. In targeting the bad faith affidavits submitted in violation of Rule 56(h), FCA sought to recover the "two

sources of costs that directly resulted from A & W and Almoosawi's bad faith submissions." ECF No. 91, PageID.4024. By its terms, the previous sanction motion was limited to the misconduct in the bad faith affidavits submitted in response to FCA's initial Motion for Summary Judgment.[3] Unlike the present motion, the requested relief pursuant to Rule 56(h) was time sensitive because Rule 54(d)(2) does not apply to motions for sanctions regarding violations of the Federal Rules of Civil Procedure.

Accordingly, the present motion—as contemplated and permitted under the Federal Rules—is ripe to address the full scope of A & W and Almoosawi's bad faith conduct.

**C.  A & W and Almoosawi Engaged in Bad Faith Conduct Throughout this Proceeding**

The Court's Order granting FCA's Renewed Motion for Summary Judgment demonstrates that the distorted and concealed facts—when brought to light—render A & W's claims futile. "Both the assignment of the lease and the insolvency of A & W constitute breaches of Sections 9 and 10 of the lease, precluding A & W from satisfying the condition precedent to exercising its option to renew." Order, ECF No. 113, PageID.5806.

---

[3] As noted above, the request pursuant to the Court's inherent authority was to alleviate all doubt regarding the Court's authority to sanction Almoosawi individually.

16

Almoosawi knew as much. Thus, to further his meritless claim he misrepresented material facts to this Court and concealed critical records. In doing so, Almoosawi engaged in bad faith litigation that warrants sanctions pursuant to the Court's inherent authority.

1.   **A & W and Almoosawi Misrepresented to the Court A & W's Operational Status and the Activities Occurring on the Property**

This Court previously ruled that Almoosawi's misrepresentations regarding A & W's operations constitutes bad faith litigation tactics. Order, ECF No. 113, PageID.5817. Indeed, in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991), the Supreme Court ruled a court may exercise its inherent authority in awarding attorney's fees where it "finds that fraud has been practiced upon." (internal citation and quotation marks omitted).  More recently, upon review of this Court's entry of default due to bad faith conduct, the Sixth Circuit found that "lying to the court" constitutes bad faith litigation conduct.  *Farrar v. Lapan*, 2023 WL 3151093, at \*1 (6th Cir. Apr. 28, 2023).

The misrepresentations regarding A & W's operations are not, however, the full extent of Almoosawi's misrepresentations to this Court. In open court and in open defiance to this Court function, Almoosawi volunteered non-truths regarding his use of the Property. In furtherance of his active concealment of the Quality Truck & Trailer subleasing and repair records, Almoosawi stated the Property is "not a

public shop so we don't do maintenance for outsiders . . . ." AHS Show Cause Hearing, ECF No. 94, PageID.4227. Eviscerating that lie were the thousands of Quality Truck & Trailer records in Almoosawi's possession. In lying to the Court, Almoosawi further demonstrated the bad faith purpose that permeated throughout this proceeding.

### 2. A & W and Almoosawi Pursued Meritless Claims Through the Concealment of Material Evidence

Almoosawi's concealment of the Quality Truck & Trailer records further constitutes bad faith conduct. In *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 523 (6th Cir. 2002), the Sixth Circuit ruled that withholding material evidence after filing a meritless lawsuit constitutes an improper use of the courts as a matter of law.

Here, Almoosawi and A & W flouted all obligations to produce the critical Quality Truck & Trailer records. In concealing the parking and repair records, Almoosawi defied discovery requests, subpoenas, lied at his deposition, and even presented non-truths directly to this Court. *See supra*, Part II.D. Accordingly, Almoosawi's prolonged concealment of critical documents warrants sanctions pursuant to the Court's inherent authority.

### D. A &W and Almoosawi's Bad Faith Conduct Caused FCA to Incur Substantial Fees and Costs

The imposition of fees caused by bad faith conduct serves an important function in maintaining the proper administration of civil proceedings. As the Sixth Circuit noted in *Shimman*, sanctions pursuant to the court's inherent authority compensate the wronged party for the costs incurred due to the bad faith tactics. 744 F.2d at 1229 (en banc). Sanctions also promote the additional "purpose of vindicating judicial authority." *Chambers*, 501 U.S. at 46 (cleaned up). Given the dual purpose, the Court's inherent authority "transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself." *Id.*

When sanctions are imposed pursuant to civil procedures, such sanctions must be compensatory in nature. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (internal citation omitted). "The court's fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct." *Id.* However, the Court has stressed that "trial courts undertaking that task 'need not, and indeed should not, become green-eyeshade accountants' (or whatever the contemporary equivalent is)." *Id.* (*quoting Fox v. Vice*, 563 U.S. 826, 836 (2011)). "'The essential goal in shifting fees is 'to do rough justice, not to achieve auditing perfection.' Accordingly, a district court 'may take into account its overall sense of

a suit, and may use estimates in calculating and allocating an attorney's time.'" *Id.* (quoting *Fox*, 563 U.S. at 836) (cleaned up).

In the present proceeding, Almoosawi's misrepresentations regarding A & W's operations on the Property prolonged this litigation while Almoosawi benefited from the delay through the continued occupation of the Property. *See* Order, ECF No. 113, PageID.5817. The imposition of substantial sanctions is further necessitated by Almoosawi's distinct misconduct of concealing the dispositive Quality Truck & Trailer subleasing and repair records. Because such misrepresentations and concealments permeated throughout the entire litigation, this Court should be compensated for the full extent of fees caused by such misconduct.

Attached as **Exhibit 7** is a breakdown of costs and fees FCA incurred, as well as the corresponding invoicing evidencing such costs. In total FCA incurred $738,987.25 in costs and fees because of the full range of A & W and Almoosawi's bad faith conduct in this proceeding. Such fees and costs reflect the substantial discovery FCA was required to obtain once required to prosecute this case through the summary judgment stage. On the specific issue of whether A & W has a right to remain on the Property, FCA prepared for and conducted nine depositions. FCA also defended two depositions of FCA's current and former agents. Additionally, as an apparent tool to conceal its misconduct and prolong this litigation, A & W engaged Stalingrad litigation tactics to stall discovery. Indeed, the register of actions from the

parallel court proceedings, attached as **Exhibit 8**, depict A & W and Almoosawi's practice of prolonging its occupation through delay. As a result of such misconduct and concealment, FCA underwent the substantial burden of engaging in extensive third party discovery to ferret out A & W and Almoosawi's lies and misconduct. Ironically, A & W and Almoosawi will argue that FCA's efforts in ferreting out Almoosawi's lies was a choice FCA made and a set of costs FCA should bear. Such reasoning ignores, however, the judicial recognition that when a party engages in misconduct, the other party " bear[s the] enormous additional effort and expense to ferret out plaintiff's lies and to double check every piece of information." *Farrar v. Lapan*, No. 20-CV-10554, 2022 WL 4122043, at \*5 (E.D. Mich. Sept. 9, 2022), (Steeh, J.).

Imposing a sanction in the amount of $738,987.25 is necessary to satisfy the "dual purpose of vindicating judicial authority . . . and making the [FCA] whole for expenses caused by [A & W' and Almoosawi's] obstinacy." *Chambers*, 501 U.S. at 46 (cleaned up). Notably, the inception of this proceeding was A & W's filing of this subsequent and parallel suit after FCA has already filed in Macomb County Circuit Court. Thus, the $738,987.25 figure includes all fees and cost—across both proceedings—incurred to obtain a judgment on the unified issue of whether A & W

had an interest in the Property following September 30, 2021.[4] Such costs are necessarily included because but-for A & W and Almoosawi's misconduct in the present proceeding, FCA would have obtained that judgment early in this proceeding, resulting in the swift resolution of the unified issues in the state court proceeding pursuant to the principles of res judicata and issue preclusion. Indeed, even a cursory review of the state court Opinion and Order shows the resolution of this proceeding resolves the common issues in the state court proceeding. *See* ECF No. 111-2, PageID.5782–5784; 5786–5787. Instead, because of A & W and Almoosawi's misconduct, FCA was required to incur cost in both proceedings.

Excluded from the $738,987.25 figure are those costs and fees that do not satisfy the but-for test set out in *Goodyear Tire & Rubber*, 581 U.S. 101. These excluded costs and fees consist of the initial fees incurred in commencing the state court proceeding, as well as the costs and fees incurred regarding the fair market rate for the Property following September 30, 2021. To be sure, FCA necessarily incurred such costs regarding an appraisal of the fair market rate pursuant to A & W's action here; A & W's request for declaratory relief as to the fair market rate remained pending until this Court's Order and Judgment. Such fees would have been incurred if A & W and Almoosawi had not prolonged this proceeding through bad

---

[4] This Court already found counsel for FCA's rates were reasonable. *See* Order, ECF No. 113.

faith conduct, however, as such evidence is relevant to FCA's in the state court proceeding. Also excluded are the fees previously subject to this Court's sanction. As a result, the $738,987.25 figure consists only of those fees and costs that were caused because of A & W and Almoosawi's bad faith conduct.

## IV.   CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, FCA respectfully requests that this Court (1) grant its motion for sanctions pursuant to Rule 54(d)(2) and this Court's inherent authority; and (2) enter an order requiring A & W and Almoosawi to pay, jointly and severally, FCA the reasonable expenses, amounts to $738,987.25.

DICKINSON WRIGHT PLLC


/s/Patrick J. Masterson
Peter H. Webster (P48783)
Patrick J. Masterson (P85457)
Attorneys for Defendant FCA US LLC
2600 West Big Beaver Road, Suite 300
Troy, MI 48084
(248) 433-7200
pwebster@dickinsonwright.com
pmasterson@dickinsonwright.com

Dated:  October 3, 2023

## **CERTIFICATE OF SERVICE**

I certify that on October 3, 2023, I electronically filed the foregoing paper with the Clerk of the Court using the Court's E-File & Serve system which will send notification of such filing to counsel of record.

/s/Patrick J. Masterson
Patrick J. Masterson (P85457)
Attorneys for Defendant FCA US LLC
pmasterson@dickinsonwright.com

4864-7526-1827 v4 [22624-1224]